IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal No. 4:24-cr-091-RGE |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | DEFENDANT'S SENTENCING BRIEF |
| LUIS NATHAN HERNANDEZ, JR., ) | AND MOTION FOR DOWNWARD |
| ) | VARIANCE |
| Defendant. ) | |

COMES NOW, the defendant, LUIS NATHAN HERNANDEZ, JR., through counsel, and hereby submits the following Motion for Downward Variance, Sentencing Memorandum, and Brief in Support for the upcoming sentencing on February 7, 2025.

**I. Witnesses**

Mr. Hernandez does not anticipate calling any witnesses at the sentencing hearing.

**II. Exhibits**

Mr. Hernandez does not have any exhibits for the sentencing hearing at this time.

**III. Argument for Downward Variance**

Defendant Luis Hernandez was a victim of sexual abuse as a child. Like many others who suffered sexual abuse as a child, Mr. Hernandez became a perpetrator of child sexual abuse. He now stands before this Court for sentencing for production and attempted production of child pornography.

In light of the factors enumerated in 18 U.S.C. § 3553(a), this Court should impose a sentence below the advisory guideline range to the mandatory minimum twenty-five years. Due to Mr. Hernandez's acceptance of responsibility, age, and medical issues, a sentence to twenty-five years, with lengthy supervised release is sufficient punishment for the offense.

There are no sentencing guideline issues in dispute. The following are factual objections, corrections, and additions to the PSR.

With regard to PSR ¶ 20, Mr. Hernandez objects that any sexual intercourse occurred. While Mr. Hernandez understands MV #1 has stated he had sexual intercourse with her, it did not occur. Mr. Hernandez has suffered from erectile disfunction as a complication to his poorly controlled diabetes since 2020, such that sexual intercourse is not possible.

With regard to the restitution requests in PSR ¶ 31, Mr. Hernandez agrees that restitution should be ordered, however he objects to any amount over $3,000 per victim.

Mr. Hernandez objects to the consideration of the narratives of dismissed charges in PSR ¶¶ 60-61, when determining an appropriate sentence.

With regard to PSR ¶ 115, Mr. Hernandez is indigent and should not be assessed the $5,000 fine. Section 3014(a) of Title 18 requires the court to impose a $5,000 special assessment on "non-indigent" defendants convicted of various crimes, including a violation of 18 U.S.C. § 2422(b). The Eighth Circuit has instructed that "§ 3014 expressly limits its special assessment to 'non-indigent' persons." *United States v. Kelley*, 861 F.3d 790, 799 (8th Cir. 2017). "[I]n the context of § 3014 indigence determinations, an analysis of both a defendant's current financial situation and his ability to pay in the future is appropriate in determining his 'non-indigent' status." *Id*. at 801.

As an initial matter, Mr. Hernandez was appointed counsel based on his current indigency. While this does not *ipso facto* render Mr. Hernandez indigent under § 3014, *id*. at 800–01, it is probative of Mr. Hernandez's indigence under § 3014. As for his ability to pay in the future, Mr. Hernandez does not have any assets, has debt, and therefore has a negative net

2

worth, which will only increase with continued lengthy incarceration. PSR ¶ 100. Mr. Hernandez must register as a sex offender upon his release. If he is incarcerated for a guideline sentence, Mr. Hernandez's earning capacity will be limited due to his age, current conviction, his registration requirements, and restrictions on supervised release. *See United States v. Barthman*, 983 F.3d 318, 323 (8th Cir. 2020) ("Barthman will be nearly 80 years old, if not older, when he is released from custody. Additionally, he will be a convicted felon with several child sex offenses on his record."). Mr. Hernandez's current financial status and future earning capacity render him indigent under § 3014, thus a $5,000 special assessment is not authorized.

Mr. Hernandez objects to the inclusion of the supervised release condition in PSR ¶ 124, as he does not have problematic drinking or substance abuse issues in his past.

Mr. Hernandez requests the supervised release condition in PSR ¶ 134 be modified to specifically state no contact with the victim and her parents. The way it is currently worded he could not have contact with his son, Amy Petro, and others in the extended family.

### A. A Downward Variance is Warranted based on § 3553(a) Factors

#### 1. Nature and Circumstances of the Offenses

There is no question that Mr. Hernandez's offense was very serious. Previously convicted of a sex offense, he stands before this Court convicted of an aggravating offense. But, like all defendants, Mr. Hernandez deserves to be sentenced based on a thoughtful consideration of (a) whether the sentencing guidelines applicable in his case are fair and the product of thoughtful consideration, and (b) the 18 U.S.C. § 3553(a) factors.

There is little that can be said to mitigate the nature and circumstances of Mr. Hernandez's instant offenses. The best that can be said is that Mr. Hernandez never employed

violence or force in committing the instant offense, but that, admittedly, is little consolation in a case that involved a grown man engaging in sexual conduct with a girl. Mr. Hernandez acknowledges that the nature and circumstances of the instant offenses are aggravating rather than mitigating.

As shameful as his behavior was, Mr. Hernandez acknowledges his actions, and is doing everything in his power to atone for his crime. Mr. Hernandez wants help and will continue to diligently work on himself through therapy when that is afforded to him.

### 2. Personal History and Characteristics

Mr. Hernandez's history and characteristics also mitigate in favor of a downward variance. Mr. Hernandez was the victim of repeated sexual abuse at the hands of his babysitter at the age of five. *See* PSR ¶ 67. Mr. Hernandez had a loving family, but grew up in poverty with the expectation, starting as a young child, that he would work to help the family. *Id.*

Mr. Hernandez's history of anxiety, mood disorder, and suicidal thoughts, along with his criminal history are reflective of an individual who has suffered immeasurably from his childhood experiences. Studies suggest that an individual who suffered from sexual abuse as a child is more likely to become a sexual abuser as an adult. *See, e.g.*, M. Glasser et al., *Cycle of Child Sex Abuse*, 179 Brit. J. Psychiatry 482 (2001) (finding, in a study of 747 males, a correlation between being a victim of child sex abuse and becoming a perpetrator of the same);[1] Nat'l Inst. of Justice, *Victims of Childhood Sexual Abuse – Later Criminal Consequences* (Mar. 1995) ("Arrest records reveal[] that, compared to children who had not been victimized, those

---

[1] This article is available at http://bjp.rcpsych.org/content/179/6/482.full.pdf (last visited Jan. 31, 2025).

who had been were more likely to be arrested for sex crimes.").[2]  Beyond propensity to become an abuser, childhood sexual abuse has other long-lasting psychological impacts including a lifetime of depression, anxiety, and Post-Traumatic Stress Disorder.

**Medical Care and Correctional Treatment**.  While incarcerated, Mr. Hernandez can benefit from the BOP's Sex Offender Treatment Program, which is designed to "promote the well-being of sex offenders while incarcerated and help both the offenders and society by reducing the likelihood of re-offence after release." BOP, Sex Offenders, https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp (last visited January 31, 2025).  In addition, he will continue his treatment while on supervised release, further reducing the likelihood of recidivism.

**Physical Issues**.  The Court should also consider Mr. Hernandez's medical conditions in fashioning an appropriate sentence.  He has a long list of chronic, serious medical issues for a man his age, including poorly controlled diabetes, arthritis, neuropathy, lipidemia, asthma, hypothyroidism, staph infections, and cellulitis. PSR ¶¶ 80-82.  These are physical issues that will make prison more burdensome for him than the average defendant.  And not sufficiently treated could result in an earlier death.

**Age.**  A guideline sentence for Mr. Hernandez – a man who will soon turn 49 years old– would likely be the functional equivalent a life sentence.  Even at the bottom of the advisory guideline range (360 months), and assuming good time credits reduce Mr. Hernandez's sentence by approximately thirteen percent, *see Barber v. Thomas*, 130 S. Ct. 2499, 2502-03 (2010), Mr. Hernandez would be 75 years old upon release – which is approximately the age at which the

---

[2]  This article is available at https://ncjrs.gov/pdffiles/abuse.pdf (last visited Jan. 31, 2025).

average man of Mr. Hernandez's age can expect to die. *See* Soc. Sec. Admin, Actuarial Life Table, http://www.ssa.gov/oact/STATS/table4c6.html (last visited Jan. 31, 2025) (providing that a 49-year-old male has an average life expectancy of 28.94 years).

Mr. Hernandez asks the Court to "consider the incremental deterrent and incapacitative effects of a very long sentence compared to a somewhat shorter one." *United States v. Craig*, 703 F.3d 1001, 1003 (7th Cir. 2012) (Posner, J., concurring). As Mr. Hernandez grows older, the cost to incarcerate him will likely increase significantly, as "an elderly prisoner costs the prison system between $60,000 and $70,000 a year," as compared to $25,000 to $30,000 for the average federal prisoner. *Id.* at 1003.

Against that additional expense, Mr. Hernandez asks the Court to consider that, in general, elderly sex offenders are less likely to recidivate. As Judge Posner noted in *Craig*, although it is true that sex offenders generally are more likely to recidivate than non-sex offenders, "capacity and desire to engage in sexual activity diminish in old age." *Id.* at 1003-04. Judge Posner also wrote:

> [A]lthough persons 65 and older are 13 percent of the population, they accounted for only seven-tenths of one percent of arrests in 2010. Last year 1,451 men ages 65 and older were arrested for sex offenses (excluding forcible rape and prostitution), which was less than 3 percent of the total number of arrests of male sex offenders that year. Only 1.1 percent of perpetrators of all forms of crime against children are between 70 and 75 years old and 1.3 percent between 60 and 69.

*Id.* at 1003 (citations omitted).

Furthermore, a downward variance could provide Mr. Hernandez with hope for release – which, as this Court has determined, "provide[s] [a d]efendant with motivation to be a good prisoner and prison officials with a tool to induce [a d]efendant's compliance with prison rules." *United States v. Williams*, 512 F.3d 1040, 1042 (8th Cir. 2008) (affirming this Court's sentence

on appeal from the defendant); *see also* 18 U.S.C. § 3553(a)(2)(D).  For these reasons, Mr. Hernandez asks the Court to consider his relatively advanced age in imposing a sentence.

**Deterrent Value of Long Sentence.**  There is little additional deterrent effect in, for example, a 360-month sentence versus a 300-month sentence.  Both are extraordinarily long sentences.  Although it is necessarily true that *Mr. Hernandez* is less likely to offend if given a 360-month sentence versus a 300-month sentence (primarily for the reason that he is unlikely to survive the longer prison sentence), even a sentence at the mandatory minimum clearly sends the message to *society* that conduct such as Mr. Hernandez's is plainly unacceptable.

## IV.  Conclusion

For all of the above reasons, Mr. Hernandez moves the Court for a downward variance to a sentence below his advisory sentencing guidelines range.  Mr. Hernandez believes the sentence that is sufficient, but not greater than necessary to further the § 3553(a) objectives is a sentence of twenty-five years, followed by a lengthy term of supervision.

Respectfully Submitted,

 */s/ Melanie S. Keiper*
Melanie S. Keiper, Assistant Federal Defender
FEDERAL PUBLIC DEFENDER'S OFFICE
400 Locust Street, Suite 340
Des Moines, Iowa 50309-2353
PHONE: (515) 309-9610  FAX: (515) 309-9625
E-MAIL: melanie_keiper@fd.org
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2025, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties via their email address(es) of record.

 */s/ Morgan Conn*, Paralegal